UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ERNESTO B. RODRIGUEZ, | ) | 1:09-cv-01376-JLT HC |
| | ) | |
| Petitioner, | ) | ORDER DISMISSING PETITION FOR WRIT |
| | ) | OF HABEAS CORPUS FOR VIOLATION OF |
| v. | ) | THE ONE-YEAR STATUTE OF |
| | ) | LIMITATIONS (Doc. 1) |
| | ) | |
| JAMES WALKER, | ) | ORDER DIRECTING CLERK OF COURT |
| | ) | TO ENTER JUDGMENT AND CLOSE FILE |
| Respondent. | ) | |
| | ) | ORDER DECLINING TO ISSUE |
| | | CERTIFICATE OF APPEALABILITY |

**PROCEDURAL HISTORY**

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On August 26, 2010, Petitioner filed his written consent to the jurisdiction of the United States Magistrate Judge for all purposes. (Doc. 7).

The instant federal petition for writ of habeas corpus was filed on July 29, 2009.[1] After a

---

[1] In Houston v. Lack, the United States Supreme Court held that a pro se habeas petitioner's notice of appeal is deemed filed on the date of its submission to prison authorities for mailing, as opposed to the date of its receipt by the court clerk. Houston v. Lack, 487 U.S. 166, 276, 108 S.Ct. 2379, 2385 (1988). The rule is premised on the pro se prisoner's mailing of legal documents through the conduit of "prison authorities whom he cannot control and whose interests might be adverse to his." Miller v. Sumner, 921 F.2d 202, 203 (9th Cir. 1990); see, Houston, 487 U.S. at 271, 108 S.Ct. at 2382. The Ninth Circuit has applied the "mailbox rule" to state and federal petitions in order to calculate the tolling provisions of the AEDPA. Saffold v. Neland, 250 F.3d 1262, 1268-1269 (9th Cir. 2000), *amended* May 23, 2001, *vacated and remanded on other grounds sub nom.* Carey v. Saffold, 536 U.S. 214, 226 (2002). The date the petition is signed may be considered the

1

preliminary review of the Petition suggested that the petition may be untimely and should therefore be dismissed, the Court, on August 5, 2010, issued an Order to Show Cause why the petition should not be dismissed as untimely. (Doc. 13). That Order to Show Cause gave Petitioner thirty days in which to file a response. On September 24, 2010, Petitioner filed his response to the Order to Show Cause. (Doc. 16).

**DISCUSSION**

A. Preliminary Review of Petition

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases. The Advisory Committee Notes to Rule 8 indicate that the court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed. Herbst v. Cook, 260 F.3d 1039 (9th Cir.2001).

The Ninth Circuit, in Herbst, concluded that a district court may dismiss *sua sponte* a habeas petition on statute of limitations grounds so long as the court provides the petitioner adequate notice of its intent to dismiss and an opportunity to respond. Herbst, 260 F.3d at 1041-42. By issuing the Order to Show Cause, the Court afforded Petitioner the notice required by the Ninth Circuit in Herbst.

B. Limitation Period for Filing a Petition for Writ of Habeas Corpus

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586

---

earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule. Jenkins v. Johnson, 330 F.3d 1146, 1149 n. 2 (9th cir. 2003). Accordingly, for all of Petitioner's state petitions and for the instant federal petition, the Court will consider the date of signing of the petition (or the date of signing of the proof of service if no signature appears on the petition) as the earliest possible filing date and the operative date of filing under the mailbox rule for calculating the running of the statute of limitation. Petitioner signed the instant petition on July 29, 2009. (Doc. 1, pt. 1, p. 6).

2

(1997).  The instant petition was filed on July 29, 2009, and thus, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1).  As amended, § 2244, subdivision (d) reads:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Here, Petitioner alleges that judgment was rendered on January 2, 2001 and that he did not file an appeal.  (Doc. 1, p. 1).  California state law governs the period within which prisoners have to file an appeal and, in turn, that law governs the date of finality of convictions.  See, e.g., Mendoza v. Carey, 449 F.3d 1065, 1067 (9th Cir. 2006); Lewis v. Mitchell, 173 F.Supp.2d 1057, 1060 (C.D. Cal. 2001)(California conviction becomes final 60 days after the superior court proceedings have concluded, citing prior Rule of Court, Rule 31(d)).  Pursuant to California Rules of Court, Rule 8.308(a), a criminal defendant convicted of a felony must file his notice of appeal within sixty days of the rendition of judgment.  See People v. Mendez, 19 Cal.4th 1084, 1086, 969 P.2d 146, 147 (1999)(citing prior Rule of Court, Rule 31(d)).  Because Petitioner did not file a notice of appeal, his direct review concluded on March 3, 2001, when the sixty-day period for filing a notice of appeal expired.  The one-year period under the AEDPA would have commenced the following day, on

1  March 4, 2001, and Petitioner would have had one year from that date, or until March 3, 2002,
2  within which to file his federal petition for writ of habeas corpus. See Patterson v. Stewart, 251 F.3d
3  1243, 1245 (9th Cir.2001).
4       As mentioned, the instant petition was filed on July 29, 2009, over seven years after the date
5  the one-year period would have expired. Thus, unless Petitioner is entitled to either statutory or
6  equitable tolling, the instant petition is untimely and should be dismissed.
7       C.  Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)
8       Under the AEDPA, the statute of limitations is tolled during the time that a properly filed
9  application for state post-conviction or other collateral review is pending in state court. 28 U.S.C.
10 § 2244(d)(2). A properly filed application is one that complies with the applicable laws and rules
11 governing filings, including the form of the application and time limitations. Artuz v. Bennett, 531
12 U.S. 4, 8, 121 S. Ct. 361 (2000). An application is pending during the time that 'a California
13 petitioner completes a full round of [state] collateral review," so long as there is no unreasonable
14 delay in the intervals between a lower court decision and the filing of a petition in a higher court.
15 Delhomme v. Ramirez, 340 F. 3d 817, 819 (9th Cir. 2003), abrogated on other grounds as recognized
16 by Waldrip v. Hall, 548 F. 3d 729 (9th Cir. 2008)(per curium)(internal quotation marks and citations
17 omitted); see Evans v. Chavis, 546 U.S. 189, 193-194, 126 S. Ct. 846 (2006); see Carey v. Saffold,
18 536 U.S. 214, 220, 222-226, 122 S. Ct. 2134 (2002); see also, Nino v. Galaza, 183 F.3d 1003, 1006
19 (9th Cir. 1999).
20      Nevertheless, there are circumstances and periods of time when no statutory tolling is
21 allowed. For example, no statutory tolling is allowed for the period of time between finality of an
22 appeal and the filing of an application for post-conviction or other collateral review in state court,
23 because no state court application is "pending" during that time. Nino, 183 F.3d at 1006-1007;
24 Raspberry v. Garcia, 448 F.3d 1150, 1153 n. 1 (9th Cir. 2006). Similarly, no statutory tolling is
25 allowed for the period between finality of an appeal and the filing of a federal petition. Id. at 1007.
26 In addition, the limitation period is not tolled during the time that a federal habeas petition is
27 pending. Duncan v. Walker, 563 U.S. 167, 181-182, 121 S.Ct. 2120 (2001); see also, Fail v.
28 Hubbard, 315 F. 3d 1059, 1060 (9th Cir. 2001)(as amended on December 16, 2002). Further, a

4

petitioner is not entitled to statutory tolling where the limitation period has already run prior to filing a state habeas petition. Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the re-initiation of the limitations period that has ended before the state petition was filed."); Jiminez v. White, 276 F. 3d 478, 482 (9th Cir. 2001). Finally, a petitioner is not entitled to continuous tolling when the petitioner's later petition raises unrelated claims. See Gaston v. Palmer, 447 F.3d 1165, 1166 (9th Cir. 2006).

Here, Petitioner alleges that he filed the following state habeas petitions: (1) petition filed in the Superior Court of Merced County on December 9, 2007, and denied on March 4, 2008 (Doc. 1, pt. 2, pp. 31; 35);[2] (2) petition filed in the 5th DCA on March 23, 2008, and denied on December 4, 2008 (Id., pt. 2, p. 47; p. 52); and (3) filed in the California Supreme Court on December 23, 2008, and denied on June 24, 2009. (Id., p. 2, p. 68; p. 71).[3]

Unfortunately, those state petitions do not afford Petitioner any statutory tolling since they were filed *after* the one-year AEDPA limitation period had expired. A petitioner is not entitled to tolling where the limitations period has already run prior to filing a state habeas petition. Green v. White, 223 F.3d 1001, 1003 (9th Cir. 2000); Jiminez v. Rice, 276 F.3d 478 (9th Cir. 2001); see Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000)(same); Ferguson v. Palmateer, 321 F.3d 820 (9th Cir. 2003)("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); Jackson v. Dormire, 180 F.3d 919, 920 (8th Cir. 1999) (petitioner fails to exhaust claims raised in state habeas corpus filed after expiration of the one-year limitations period). Here, as mentioned, the limitations period expired on March 3, 2002, over five years *before* Petitioner filed his first state habeas petition. Accordingly, he cannot avail himself of the statutory tolling provisions of the AEDPA for these state petitions.

///

---

[2] In computing the running of the statute of limitations, the day an order or judgment becomes final is excluded and time begins to run on the day after the judgment becomes final. See Patterson v. Stewart, 251 F.3d 1243, 1247 (9th Cir. 2001) (Citing Rule 6 of the Federal Rules of Civil Procedure).

[3] Petitioner also alleges that he filed a habeas petition in the Merced County Superior Court that was denied on August 28, 2007. However, Petitioner indicates that this petition did not challenge his 2001 conviction but instead related to his request for production of transcripts. (Doc. 1, pt. 1, pp. 2-3). Accordingly, it is not germaine to the Court's timeliness analysis.

D.  Equitable Tolling

The running of the one-year limitation period under 28 U.S.C. § 2244(d) is subject to equitable tolling in appropriate cases. See Holland v. Florida, __U.S.__, 130 S.Ct. 2549, 2561 (2010); Calderon v. United States Dist. Ct., 128 F.3d 1283, 1289 (9th Cir. 1997).  The limitation period is subject to equitable tolling when "extraordinary circumstances beyond a prisoner's control make it impossible to file the petition on time." Shannon v. Newland, 410 F. 3d 1083, 1089-1090 (9th Cir. 2005)(internal quotation marks and citations omitted).  "When  external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."   Holland, 2010 WL 2346549 at *12; Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807 (2005). "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F. 3d 1062, 1066 (9th Cir. 2002)(citation omitted).  As a consequence, "equitable tolling is unavailable in most cases." Miles, 187 F. 3d at 1107.

In his response to the Court's Order to Show Cause, Petitioner filed a lengthy argument in which, for the first time, he claims entitlement to equitable tolling.  Petitioner bases his claim for equitable tolling on four factors: (1) starting in 2001, he was placed in the Secure Housing Unit ("SHU") on numerous occasions and at several facilities, which made it difficult to maintain control over his court documents and files, as well as limiting his access to the prison's law library; (2) Petitioner was suffering a mental disability or incompetence that was an "extraordinary circumstance" beyond Petitioner's control, thus making it impossible to timely file his federal petition; (3) Petitioner's "jailhouse" lawyers were repeatedly transferred and it was difficult for Petitioner to locate a new inmate to assist with the preparation of the petition; (4) Petitioner had difficulty obtaining his court transcripts from his trial; (5) Petitioner could not have raised his

6

Cunningham[4] claim earlier since that case had not been decided; and (6) Petitioner did not discover the factual basis for his claims until 2007 when an inmate advised him of the claims. (Doc. 16, pp. 1-12).

For the reasons set forth below, none of Petitioner's claims of entitlement to equitable tolling have merit. At the outset, it bears emphasis that the only time period that is relevant to the equitable tolling discussion is the one-year period during which the AEDPA provided for filing of a federal petition, i.e., from March 4, 2001 through March 3, 2002.

Petitioner's claims of "extraordinary circumstances" arising from his confinement in the SHU, his mental disabilities, and the difficult in obtaining the assistance of a "jailhouse lawyer" fail because Petitioner does not allege that he suffered these specific "extraordinary circumstances" during the relevant time period. Indeed, he indicates that he was not confined to the SHU until March 7, 2002, after the one-year period had expired. (Doc. 16, p. 4). Moreover, even if Petitioner's SHU confinement had occurred during the relevant time period, it still would not be a valid basis for equitable tolling. Unpredictable lockdowns or library closures do not constitute extraordinary circumstances warranting equitable tolling in this case. See United States v. Van Poyck, 980 F.Supp. 1108, 1111 (C.D.Cal.1997) (inability to secure copies of transcripts from court reporters and lockdowns at prison lasting several days and allegedly eliminating access to law library were not extraordinary circumstances and did not equitably toll one-year statute of limitations); Atkins v. Harris, 1999 WL 13719, *2 (N.D.Cal. Jan.7, 1999) ("lockdowns, restricted library access and transfers do not constitute extraordinary circumstances sufficient to equitably toll the [AEDPA] statute of limitations. Prisoners familiar with the routine restrictions of prison life must take such matters into account when calculating when to file a federal [habeas] petition.... Petitioner's alleged lack of legal sophistication also does not excuse the delay."); Giraldes v. Ramirez-Palmer, 1998 WL 775085, *2 (N. D.Cal.1998) (holding that prison lockdowns do not constitute extraordinary circumstances warranting equitable tolling). Petitioner's indigent status, his limited legal knowledge, and the vicissitudes of prison life are circumstances that are no different than those incurred by the vast majority of incarcerated prisoners attempting to file petitions for writ of habeas

---

[4]Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856 (2007).

1  corpus.  Nor is his inability to locate and sustain a productive relationship with a "jailhouse lawyer"
2  grounds for equitable tolling.  Such circumstances, are, by definition, not extraordinary, since they
3  are shared by all state inmates proceeding pro se,  and thus do not justify equitable tolling.  If limited
4  resources and lack of legal knowledge were an excuse for not complying with the limitations period,
5  then Congress would have never enacted the AEDPA since most incarcerated prisoners have these
6  same problems.

　　　　While Petitioner contends that he suffered from insanity, low intelligence, and incompetence
at trial, he does not expressly allege that he suffered from those disabilities during the relevant period
from March 4, 2001 through March 3, 2002.  The exhibits attached to the petition include various
medical and mental examinations conducted between 1998 and 2000.  (Doc. 1, Exs. A-E, pp. 8-93).
None of these documents establish that Petitioner's mental condition was in any way a cause, let
alone a "but for" cause, of Petitioner's failure to timely file a federal petition between March 4, 2001
and March 3, 2002.  See Laws v. Lamarque, 351 F.3d 919, 922-923 (9th Cir. 2003)(stating that
equitable tolling is available only where a petitioner's mental incompetence somehow made filing a
timely habeas petition impossible); Taylor v. Dickinson, 2010 WL 708615, *1 (9th Cir. March 2,
2010).

　　　　Moreover, even for the period outside of the one-year AEDPA window, the Superior Court
expressly found that Petitioner had not substantiated his claim of insanity and had only established
that he was a "low performer." (Doc. 1, Attach. 1, p. 36).  The 5th DCA, by citing People v. Duvall,
9 Cal. 4th 464 (1994) in its denial of Petitioner's state habeas petition,  concluded that Petitioner had
failed to summarize the facts in the record that supported his contentions of mental disability. (Doc.
1, Attach. 1, p. 52).  As discussed above, the record here does not support a claim that, during the
relevant one-year period, Petitioner suffered mental disabilities that precluded him from filing his
federal petition in a timely manner.

　　　　In fact, the only circumstance Petitioner cites during that time period that impacted his ability
to prepare his federal petition was his inability to obtain transcripts and other documents from the
state courts. (Doc. 16, p. 4).  Petitioner, however, has not shown that the absence of those
documents precluded him from preparing his federal petition.  Rather, he argues, incongruously, that

8

he did not discover the three grounds in the instant petition until 2007 after being advised of their existence by another inmate. Therefore, it is difficult to comprehend how, "but for" the absence of those transcripts, Petitioner would have been able to timely file his federal petition during the one-year window.

In any event, Petitioner's contention that he did not discover the "factual basis" for his three claims until November 2007, when he was advised of same by another inmate, does not entitle him to equitable tolling. (Doc. 16, p. 7). As mentioned, under § 2244(d)(1)(D), the one-year limitation period starts on the date when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," Hasan v. Galaza, 254 F.3d 1150, 1154, fn. 3 (9th Cir. 2001)(*quoting* Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000), not when the factual predicate was actually discovered by Petitioner and not when Petitioner understands the legal theories available to him or the legal significance of the facts that he discovers. Due diligence does not require "the maximum feasible diligence," but it does require reasonable diligence in the circumstances. Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004)(*quoting* Moore v. Knight, 368 F.3d 936, 940 (7th Cir. 2004); see Wims v. United States, 225 F.3d 186, 190, fn. 4 (2d Cir. 2000). It is not necessary for a petitioner to understand the legal significance of the facts; rather, the clock starts when a petitioner understands the facts themselves. Hasan, 254 F.3d at 1154 fn. 3; Owens, 235 F.3d at 359 ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognized their legal significance.") To "have the factual predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have discovered (or with the exercise of due diligence could have discovered) facts suggesting both unreasonable performance and resulting prejudice." Hasan, 254 F.3d at 1154. In order to claim the benefit of tolling in this case, it is Petitioner's burden to establish it. Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002); Tholmer v. Harrison, 2005 WL 3144089 (E.D.Cal. Nov. 22, 2005), *1; see Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir. 1993)(party seeking tolling bears the burden of alleging facts which would give rise to tolling).

Here, no later than by the end of his trial in 2001, Petitioner was aware that the trial court was sentencing him on an enhancement that had not been found true by a jury, that his purported mental

disabilities at trial were an issue in light of the extensive pre-trial mental health testing of Petitioner, and that his trial counsel had failed to raise a "not guilty by reason of insanity" defense on Petitioner's behalf. That Petitioner, due to his lack of legal training, may not have appreciated the legal significance of these facts vis-a-vis a federal habeas petition, does not alter the fact that he was aware of these *factual bases* for his claims no later than the end of his criminal trial. Accordingly, even under subsection (d)(1)(D), the one-year period would have commenced and expired within a year of that date.

In his response to the Order to Show Cause, Petitioner states that he "did not realize his absolute right and possible erroneous conviction" for his Cunningham claim until that case was decided on January 22, 2007. (Doc. 16, p. 9). This contention also lacks merit.

Impliedly Petitioner is contending that 28 U.S.C. § 2244(d)(1)(D) applies to this claim, i.e., the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence, rather than subsection (d)(1)(A), the date on which direct review concluded. Petitioner bases his contention on the fact that the claim in the instant petition is based upon alleged error of the trial judge in sentencing Petitioner for an enhancement that was not submitted to a jury for factfinding. For this proposition, Petitioner relies on the United States Supreme Court's decision in Cunningham v. California, 549 U.S. 270, which found California's determinate sentencing law unconstitutional because it permitted trial courts to sentence defendants to the upper term based on facts that had not been proven to a jury beyond a reasonable doubt. Petitioner is mistaken.

Under Petitioner's reading of § 2244(d)(1)(D), the one-year limitations period begins when a prisoner actually understands what legal theories are available to him. However, as mentioned previously, such an interpretation is incorrect. According to the wording of the statute, the one-year time limit commences on the date the "factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," not when it was actually discovered by the petitioner. In addition, the trigger in § 2244(d)(1)(D) is the discovery, actual or imputed, of the claim's "factual predicate," *not* the recognition of the facts' legal significance. Stated differently, the time begins when the prisoner knows, or through diligence could discover, the salient facts, not when

he recognizes the legal significance of those facts.

In this case, Petitioner was well aware of the factual predicate for his claim, i.e., that the enhancement imposed on him as of the Superior Court's sentencing in 2001 was based in part upon facts not found by a jury beyond a reasonable doubt. Thus, the United States Supreme Court's decision in Cunningham some six years after Petitioner was sentenced did not provide Petitioner with the "factual predicate" for his claim of an unconstitutional sentence. Cunningham merely provided additional context for the legal significance of those facts. As such, the one-year limitation period commenced from the "normal" date, i.e., the conclusion of direct review on November 11, 2003, not the date Cunningham was decided.

Even were this not the case, Petitioner still could not avail himself of the decision in Cunningham. In Butler v. Curry, 528 F.3d 624 (9th Cir. 2008), the Ninth Circuit clarified the Cunningham decision by holding that the decision was compelled by the Supreme Court's prior decision in Blakely v. Washington, 542 U.S. 296 (2004). Thus, the determination whether a petitioner's constitutional rights were violated rests, as a threshold matter, on whether his conviction became final before Blakely, *not* Cunningham, was decided. Citing Teague v. Lane, 489 U.S. 288, 306, 109 S.Ct. 1060 (1989), the Ninth Circuit panel stated as follows:

> Apprendi, Blakely, and Booker made "courts throughout the land" aware that sentencing schemes that raise the maximum possible term based on facts not found by a jury violate the constitutional rights of defendants. [Cunningham, supra,] at 306. No principles of comity or federalism would be served by refusing to apply this rule to functionally indistinguishable state sentencing schemes on collateral review. Cunningham thus *did not announce a new rule of constitutional law and may be applied retroactively on collateral review*.

Butler, supra, at 639. (Emphasis supplied). Blakely, therefore, is the case on which Petitioner's case depends because Blakely is not retroactively applied. Schardt v. Payne, 414 F.3d 1025, 1038 (9th Cir. 2005). In other words, Cunningham cannot be applied retroactively for cases which were final prior to Blakely. Petitioner's conviction became final on March 3, 2001. Blakely was not decided until June 24, 2004. Thus, even if Petitioner could avoid the statute of limitation problem that is fatal to his petition, Cunningham would not, under Teague, apply retroactively to his sentence in any event. Accordingly, nothing in Petitioner's response to the Court's Order to Show Cause dissuades the Court from its original conclusion that the petition is untimely and must be dismissed.

1    Moreover, the Court declines to issue a certificate of appealability. A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
>     (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or
>     (B) the final order in a proceeding under section 2255.
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denied a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (*quoting* Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court DECLINES to issue a certificate of appealability.

///

///

**ORDER**

For the foregoing reasons, the Court HEREBY ORDERS:

1. The Petition for writ of habeas corpus (Doc. 1), is DISMISSED as being in violation of 28 U.S.C. § 2244(d)(1).
2. The Clerk of the Court is DIRECTED to enter judgment and close the file.
3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **October 1, 2010**                              /s/ **Jennifer L. Thurston**
                                                                        UNITED STATES MAGISTRATE JUDGE